
FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2019 DEC -5 PM 2:08
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

BRANCH BANKING AND TRUST
COMPANY,

    Plaintiff,

v.

J. ANTHONY REGISTER and JOHN
H. MEEKS,

    Defendants.

CASE NO. CV418-278

## O R D E R

Before the Court is Plaintiff Branch Banking and Trust Company's ("BB&T") Motion for Summary Judgment (Doc. 18), to which Defendants have responded (Doc. 22). For the following reasons, Plaintiff's motion is **GRANTED**.

### BACKGROUND[1]

This case arises out of a series of promissory notes and guaranties entered into between BB&T and Highland Enterprises, Inc. ("Highland Enterprises"), a corporation owned by Defendants

---

[1] In compliance with Southern District of Georgia Local Rule 56.1, Plaintiff served Defendants with a statement of material facts that Plaintiff claimed were undisputed. (Doc. 18, Attach. 2.) Defendant has not objected to Plaintiff's statement of material facts. Under Local Rule 56.1, uncontested statements are deemed admitted. See Ameris Bank v. SB Partners, LLC, 157 F. Supp. 3d 1356, 1359-60 (S.D. Ga. 2016). Therefore, the Court will consider Plaintiff's facts admitted.

J. Anthony Register and John H. Meeks.[2] (Doc. 18, Attach. 2 at 1.)

There are three notes at issue:

(1) Note-2 was executed by Highland Enterprises on November 26, 2003 for $772,200.00. (Doc. 18, Attach. 2 at 1; Doc. 19, Attach. 2.) Defendants Register and Meeks signed Note-2 on behalf of Highland Enterprises. (Doc. 18, Attach. 2 at 2; Doc. 19, Attach. 2.) The interest rate on Note-2 was BB&T's prime rate plus 0.125% per annum. (Doc. 18, Attach. 2 at 1; Doc. 19, Attach. 2.) The interest rate was to be adjusted daily as BB&T's prime rate changed. (Doc. 18, Attach. 2 at 1; Doc. 19, Attach. 2.) On November 26, 2003, Defendants Register and Meeks both executed personal guaranties unconditionally guaranteeing the payment of "Note-2 and any and all debts then owing or thereafter incurred from Highland Enterprises to BB&T." (Doc. 18, Attach. 2 at 2; Doc. 19, Attach. 4, Attach. 5.) Highland Enterprises subsequently executed a series of note modification agreements that extended the maturity date of Note-2. (Doc. 18, Attach. 2 at 2; Doc. 19, Attach. 3.) These modification agreements were signed by Defendants Register and Meeks on behalf of Highland Enterprises. (Doc. 18, Attach. 2 at 2; Doc. 19, Attach. 3.) As security for Note-2, Highland Enterprises executed a Georgia Security Deed and Security Agreement ("Note-2 Security Agreement"), granting BB&T a security interest in certain real property. (Doc. 18, Attach. 2 at 3; Doc. 19, Attach. 6.) The Note-2 Security Agreement was signed by Defendants Register and Meeks. (Doc. 19, Attach. 6 at 7.)

(2) Note-6 was executed by Highland Enterprises on November 16, 2005 for $575,000.00. (Doc. 18, Attach. 2 at 3; Doc. 19, Attach. 7.) Defendants Register and Meeks signed Note-6 on behalf of Highland Enterprises. (Doc. 18, Attach. 2 at 4; Doc. 19, Attach. 7.) The interest rate on Note-6 was BB&T's prime rate plus 0.125% per annum. (Doc. 18, Attach. 2 at 4; Doc. 19, Attach. 7.) The interest rate was to be adjusted daily as BB&T's prime rate changed. (Doc. 18, Attach. 2 at 4; Doc. 19, Attach. 7.) On November 25, 2008,

---

[2] Highland Enterprises is not a party to this matter.

> Defendants Register and Meeks executed personal guaranties unconditionally guaranteeing the payment of "Note-6 and any and all debts then owing or thereafter incurred from Highland Enterprises to BB&T." (Doc. 18, Attach. 2 at 4-5; Doc. 19, Attach. 9, Attach. 10.) On the same day, Highland Enterprises executed a note modification agreement that extended the maturity date of Note-6. (Doc. 18, Attach. 2 at 4; Doc. 19, Attach. 8.) This modification agreement was signed by Defendant Register on behalf of Highland Enterprises. (Doc. 18, Attach. 2 at 4; Doc. 19, Attach. 8 at 5.) As security for Note-6, Highland Enterprises executed a Georgia Security Deed and Security Agreement ("Note-6 Security Agreement"), granting BB&T a security interest in certain real property. (Doc. 18, Attach. 2 at 5; Doc. 19, Attach. 11.) The Note-6 Security Agreement was signed by Defendants Register and Meeks. (Doc. 19, Attach. 11.)
>
> (3) Note-9 was executed by Highland Enterprises on February 4, 2008 for $768,000.00. (Doc. 18, Attach. 2 at 4; Doc. 19, Attach. 12.) Defendants Register and Meeks signed Note-9 on behalf of Highland Enterprises. (Doc. 18, Attach. 2 at 5-6; Doc. 19, Attach. 12.) The interest rate on Note-9 was BB&T's prime rate plus 0.000% per annum. (Doc. 18, Attach. 2 at 6.) On February 4, 2008, Register and Meeks executed personal guaranties unconditionally guaranteeing the payment of "Note-9 and any and all debts then owing or thereafter incurred from Highland Enterprises to BB&T." (Doc. 18, Attach. 2 at 6; Doc. 19, Attach. 13, Attach. 14.) As security for Note-9, Highland Enterprises executed a Georgia Security Deed and Security Agreement ("Note-9 Security Agreement"), granting BB&T a security interest in certain real property. (Doc. 18, Attach. 2 at 6-7; Doc. 19, Attach. 15.) The Note-9 Security Agreement was signed by Defendants Register and Meeks. (Doc. 18, Attach. 2 at 6-7; Doc. 19, Attach. 15.)

Defendants Register and Meeks defaulted on all 3 notes. (Doc. 18, Attach. 2 at 7; Doc. 19, Attach. 16-18.) Consequently, on October 5, 2010, Plaintiff foreclosed on the properties secured by the

3

Note-2 Security Agreement, Note-6 Security Agreement, and Note-9 Security Agreement. (Doc. 18, Attach. 2 at 7.) Prior to the foreclosure sale, the principal balances due on the notes were as follows: Note-2 had $761,109.23 due (Doc. 16), Note-6 had $566,741.65 due (Doc. 17), and Note-9 had $716,472.94 due (Doc. 18).

At the foreclosure sale, each property was sold to Atlas GA II SPE, LLC, a subsidiary of BB&T, for the following amounts: the property secured by the Note-2 Security Agreement sold for $490,000; the property secured by the Note-6 Security Agreement sold for $340,000; and the property secured by the Note-9 Security Agreement sold for $440,000. (Doc. 19, Attach. 2 at 9.) However, the foreclosure sale did not yield the full principal amounts remaining under the notes. (Doc. 18, Attach. 2 at 9.) As a result, BB&T filed suit in this Court seeking recovery of the remaining principal balances due under the notes, interest due under the notes, and statutory attorneys' fees. (Doc. 1.)

In its complaint, Plaintiff BB&T declared the entire indebtedness immediately due and payable. (Doc. 1; Doc. 19, Attach. 1 at 26.) Defendants filed two separate answers and each answer asserted five defenses: (1) that Plaintiff fails to state a claim upon which relief can be granted; (2) that Plaintiff's allegations fall outside of the applicable statute of limitations; (3) that Plaintiff has unjustly enriched itself by taking advantage of the

4

labor of Defendants; (4) that every allegation not expressly admitted to is denied; and (5) that the guaranties as to their design and language do not comply with the requirements of O.C.G.A. § 9-3-23 and are in part and in whole unenforceable. (Doc. 11, Attach. 1; Doc. 16.)

On August 22, 2019, Plaintiff filed this Motion for Summary Judgment stating that Defendants are liabile as a matter of law because they admitted that they signed the notes and guaranties and then defaulted on the notes; that Defendants' admissions, BB&T's business records, and affidavit testimony establish damages as a matter of law; and that Defendants have no valid defenses. (Doc. 18, Attach. 1 at 7-24.) Defendants filed a response arguing only that summary judgment should not be granted because Plaintiff failed to account for approximately $30,000 of work performed by Defendants on pieces of property belonging to Plaintiff. (Doc. 22 at 3.) Defendants claim that they performed this work without receiving compensation from Plaintiff and, therefore, Plaintiff would be unjustly enriched if Defendants were not paid. (Id.) In response, Plaintiff argues that Defendants' allegation of unjust enrichment is "unsupported and cursory," but nevertheless Plaintiff agrees to offset the total amount due on the notes by $30,000 to "eliminate any potential issue of fact . . . ." (Doc. 24 at 5.)

## STANDARD OF REVIEW

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

> believes demonstrate the absence of a genuine
> issue of material fact.

Celotex, 477 U.S. at 323, 106 S. Ct. at 2553. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88, 106 S. Ct. at 1356. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id., 475 U.S. at 586, 106 S. Ct. at 1356. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

## ANALYSIS

I. <u>DEFENDANTS' LIABILITY</u>

Defendants do not dispute that the notes, guaranties, and security agreements are governed under the laws of Georgia. (See e.g., Doc. 19, Attach. 7 at 3.) In Georgia, "[i]t is well

established that a plaintiff seeking to enforce a promissory note establishes a prima facie case by producing the note and showing that it was executed." Stewart v. Johnson, 269 Ga. Ct. App. 698, 699, 605 S.E.2d 111, 113 (Ga. Ct. App. 2004); (citing O.C.G.A. § 11-3-308(a); Vandegriff v. Hamilton, 238 Ga. App. 603, 603, 519 S.E.2d 702, 703 (Ga. Ct. App. 1999)). Once the note has been produced and shown to be executed, "the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense." Stewart, 269 Ga. App. at 699; (citing O.C.G.A. § 11-3-308(b); McLemore v. Sw. Ga. Farm Credit, 230 Ga. App. 85, 87, 495 S.E.2d 335, 337 (Ga. Ct. App. 1998); Commonwealth Land Title Ins. Co. v. Miller, 195 Ga. App. 830, 832, 395 S.E.2d 243, 245 (Ga. Ct. App. 1990); Sadler v. Trust Co. Bank of S. Ga., 178 Ga. App. 871, 873, 344 S.E.2d 694, 695 (Ga. Ct. App. 1986)).

This case presents no genuine issue of material fact. As an initial matter, Defendants did not object to Plaintiff's statement of material facts and, therefore, the facts are deemed admitted. See S.D. Ga. L.R. 56.1. Defendants have also expressly admitted that they are liable for the amounts due on each note. (Doc. 19, Attach. 19 at 3-4.) In Defendant Meeks' affidavit, he concedes that Plaintiff BB&T loaned Highland Enterprises money in Note-2, Note-6 and Note-9, that Defendants Register and Meeks personally guaranteed the notes, and that Defendants have not paid the full amount due on the notes. (Doc. 19, Attach. 19 at 3-4.) Moreover,

in their response brief, Defendants do not dispute their liability under the notes nor point to any evidence contradicting Plaintiff's statement of material facts. In fact, Defendants only argue that Plaintiff should not be granted summary judgment because "Plaintiff failed to support its alleged damages . . . through its failure to account for work done by both Defendants for the Plaintiff . . . that went uncompensated by [BB&T]." (Doc. 22 at 2.) Defendants go on to assert, without pointing to any evidence, that Plaintiff owes them $30,000 for improving the value of the foreclosed properties. (Doc. 22 at 1.) As a result, Plaintiff is entitled to judgment as a matter of law because it has shown that Defendants executed Note-2, Note-6, and Note-9, that Defendants defaulted on the notes, and that Defendants do not assert any valid defense. (Doc. 18, Attach. 2.)

The Court need not address Defendants' sole argument—that Plaintiff will be unjustly enriched because it did not compensate Defendants for $30,000 worth of labor.[3] (Doc. 22.) Instead, Plaintiff, in its reply to Defendants' Response to Plaintiff's Motion for Summary Judgment, has agreed to offset the damages award by $30,000 so as to "eliminate any potential issue of fact . . . ."

---

[3] Even if the Court did consider Defendants' argument, Defendants failed to produce any evidence regarding the labor performed, the value of such labor, or that Plaintiff induced Defendants' labor. Thus, Defendants could not establish a genuine issue of material fact without any evidence supporting their argument.

9

(Doc. 24 at 5.) As a result, Plaintiff's Motion for Summary Judgment against Defendants' is **GRANTED**.

II. DAMAGES

Plaintiff also argues that summary judgment is proper as to the amount of damages due on the notes, including interest and attorney's fees. (Doc. 18, Attach. 1.) Plaintiff has provided detailed calculations of the unpaid principal amounts and accrued interest for each note up to August 13, 2019. (Doc. 19, Attach. 1 at 11-26.) However, Plaintiff also seeks daily interest, at varying rates, for each note through the date of this Order. (Doc. 18, Attach. 1 at 17.) Additionally, Plaintiff seeks attorney's fees under O.C.G.A. § 13-1-11. Each of these requests for damages will be addressed in turn.

First, Plaintiff requests the unpaid principal balances on Note-2, Note-6, and Note-9. (Doc. 18, Attach. 1 at 9.) After applying the foreclosure sale proceeds to the principal balances, Note-2 has an outstanding balance of $271,109.23, Note-6 has an outstanding principal balance of $226,741.65, and Note-9 has an outstanding principal balance of $276,472.94. (Id.) In total, Defendants owe $774,323.82 under Note-2, Note-6, and Note-9. Defendants did not dispute Plaintiff's calculations of unpaid principal balances. However, Plaintiff agreed to offset this amount by $30,000 in their reply brief. (Doc. 24 at 5.) As a

10

result, the Court finds that Defendants' liability on the total principal amount owed on the notes is **$744,323.82.**

Second, Plaintiff requests unpaid interest on Note-2, Note-6, and Note-9. (Doc. 18, Attach. 1 at 10.) Defendants did not dispute Plaintiff's calculations of unpaid interest. As of August 13, 2019, Defendants owe $123,904.37 in interest on Note-2, $100,843.10 in interest on Note-6, and $113,778.70 in interest on Note-9. (Id. at 13-17.) As a result, the Court finds that Defendants' liability on the the total interest owed on the notes through August 13, 2019 is **$338,526.17.**

Third, Plaintiff requests daily interest on each note from August 14, 2019 through the date of judgment—that is, the date of this Order. (Doc. 18, Attach. 1 at 17.) Defendants did not dispute Plaintiff's request for daily interest. Specifically, Plaintiff requests $40.4781 per day under Note-2, $33.8538 per day under Note-6, and $40.3190 per day under Note-9. (Id.) As a result, the Court finds that Defendants' are liable for daily interest calculated at the foregoing rates from August 14, 2019 to the date of this Order.

Lastly, Plaintiff requests statutory attorneys' fees pursuant to O.C.G.A. § 13-1-11(a)(2). The statute, in pertinent part, states:

> (a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid

11

> and enforceable and collectable as a part of such debt if such note or other evidence or indebtedness is collected by or through an attorney after maturity, subject to subsection (b) of this Code section and the following provisions: . . . (2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00 . . . .

O.C.G.A. § 13-1-11(a)(2).[4] In this case, the notes do not specify a specific percent of the principal amounts and interest that will account for attorney's fees. Additionally, Defendants did not dispute Plaintiff's recovery of attorney's fees under § 13-1-11. As a result, the Court finds that Defendants are liable for attorney's fees in the amount of **$111,359.99,** as determined by § 13-1-11(a)(2).[5]

---

[4] The Court notes that § 13-1-11(b)(1) allows a party to seek a determination as to the reasonableness of attorney's fees when the award is greater than $20,000.00. O.C.G.A. § 13-1-11(b)(1). Here, Plaintiff notified Defendants in the Motion for Summary Judgment that Plaintiff intended to pursue attorney's fees under § 13-1-11(a)(2). (Doc. 18, Attach. 1 at 18.) Defendants did not seek a determination of reasonableness of the fees owed in their response to the motion. As a result, the Court will proceed under § 13-1-11(a)(2) without a determination as to the reasonableness of the amount of attorney's fees.

[5] This amount was calculated by finding the total principal balance and interest owed on each note, calculating 15% of the first $500 of each note, calculating 10% of the amount in excess of $500 of each note, and adding each note's final calculation together for a total amount of attorney's fees.

## CONCLUSION

For the foregoing reasons, Plaintiff BB&T's Motion for Summary Judgment is **GRANTED**. The Court **DIRECTS** the Clerk to enter judgment in favor of BB&T against Defendants Register and Meeks and **ORDERS** that Defendants Register and Meeks pay the following amounts: (1) **$744,323.82** in unpaid principal balances; (2) **$338,526.17** in interest; (3) the daily interest accrued from August 14, 2019 to the date of this Order at the rates specified above; (4) attorney's fees in the amount of **$111,359.99**; and (5) the appropriate court costs of Plaintiff. The Clerk is **DIRECTED** to close this case.

SO ORDERED this 5th day of December 2019.

_____
WILLIAM T. MOORE, JR.,
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA